J-S49022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LATEEF FAISON | |
| Appellee | No. 3076 EDA 2013 |

Appeal from the Order October 4, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006929-2012

BEFORE:  OLSON, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                         **FILED APRIL 10, 2015**

The Commonwealth appeals[1] from the order dated October 4, 2013, entered in the Court of Common Pleas of Philadelphia County, granting Lateef Faison's motion to suppress physical evidence obtained by the police following the warrantless search of his vehicle.  The Commonwealth claims the trial court erred in suppressing a baggie of pills found in the car because the contraband was observed in plain view during a lawful traffic stop.  After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

_____

[1]  The Commonwealth has certified in its notice of appeal that the suppression order will terminate or substantially handicap its prosecution of the case.  **See** Pa.R.A.P. 311(d).

The trial court recounted the testimony from the suppression hearing

as follows:

> On May 26, 2012 at approximately 6:30 p.m., Defendant
> Lateef Faison made an illegal left turn on a red light. Officers
> witnessed [Faison]'s illegal traffic maneuver and immediately
> followed [Faison]. [Faison] parked his vehicle on the pavement,
> exited the vehicle, and walked away while the vehicle was still
> running. As [Faison] walked away, officers pulled up and parked
> behind [Faison]'s parked car. An officer exited the vehicle,
> stopped [Faison], and brought [him] back to [his] vehicle to
> issue a citation.
>
> As the officer opened [Faison]'s driver-side door to place
> [Faison] back in the vehicle, the officer noticed a gun between
> the driver seat and the console. [Faison] was able to produce a
> valid permit to carry a firearm and at no time did [Faison] reach
> for the gun. In reaching into the vehicle to secure the weapon
> and unload it, the officer noticed a bag of blue pills on the floor
> of the passenger's side of the vehicle. The officer called Poison
> Control in order to identify the pills, because he did not know
> what they were. After describing the markings, Poison Control
> told the officer that the pills were Schedule II narcotics.
>
> [Faison] was arrested and charged with Manufacture,
> Delivery, or Possession with Intent to Manufacture or Deliver (35
> P.S. § 780-113(a)(30)), Intentional Possession of a Controlled
> Substance (35 P.S. § 780-113(a)(16)), and Possessing
> Instruments of Crime (18 Pa.C.S.A. § 907(a)).

Trial Court Opinion, 4/1/2014, at 1-2 (record citations omitted).

On July 17, 2013, Faison filed a motion to suppress the drugs seized

during the search of his car. On October 4, 2013, a suppression hearing was

held, and the trial court granted Faison's motion. The Commonwealth filed this timely appeal.[2]

In its sole issue on appeal, the Commonwealth argues the trial court erred in suppressing the pills found in Faison's car because the seizure of the drugs was proper where the officers observed the contraband in plain view. Commonwealth's Brief at 8. The Commonwealth contends it met all of the requirements of the "plain view" test based on the following. First, Police Officer Chris Sharamatew was at a lawful vantage point when he observed the bag of pills on the floor of the car after conducting a proper traffic stop. *Id.* Second, the incriminating nature of the bag of pills was immediately apparent. *Id.* at 9. Third, the Commonwealth states the officer had a lawful right of access to the baggie of pills under the automobile exception to the warrant requirement. *Id.* at 11, *citing* **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014).

With regard to the "immediately apparent" factor, the Commonwealth, relying on **Commonwealth v. Liddie**, 21 A.3d 229 (Pa. Super. 2011), maintains the officer need not be absolutely certain that the substance is

---

[2] The Commonwealth's appeal was originally dismissed for failure to file a docketing statement under Pa.R.A.P. 3517. The Commonwealth then filed a motion to reinstate the appeal due to a breakdown in the notification process. On January 21, 2014, by *per curiam* order, this Court granted to the motion to reinstate the appeal.

In a related matter, Faison did not file an appellee's brief in this appeal.

incriminating and that his belief need only be supported by probable cause. *Id.* Moreover, it alleges that based on the totality of the circumstances, there was probable cause, in the present case, to support the officer's belief that the pills were incriminating. The Commonwealth points to the following: "[Faison] walked away from his car while it was still running after being stopped for a traffic violation. Further, the pills were packaged in a plastic baggie, [Faison] did not produce a prescription for them, and they were in close proximity to a gun." *Id.* at 10.

Our standard of review is as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Baker*, 946 A.2d 691, 693 (Pa. Super. 2008) *quoting* *Commonwealth v. Barber*, 889 A.2d 587, 592 (Pa. Super. 2005). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). Nevertheless, the suppression court's conclusions of law are not binding on an appellate court,

and are subject to plenary review. **Commonwealth v. Johnson**, 969 A.2d

565, 567 (Pa. Super. 2009) (citations omitted).

The Fourth Amendment of the United States Constitution provides,

"[t]he right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures, shall not be violated

…." U.S. Const. amend. IV. The Pennsylvania Constitution also protects this

interest by ensuring, "[t]he people shall be secure in their persons, houses,

papers and possessions from unreasonable searches and seizures …." Pa.

Const. Art. I, § 8. Moreover, "a lawful search generally extends to the entire

area in which the object of the search may be found." **Commonwealth v.**

**Rega**, 933 A.2d 997, 1013 (Pa. 2007) (citation omitted), *cert. denied*, 552

U.S. 1316 (2008).

We note that "[u]ntil recently, in order for police officers to conduct a

lawful search of an automobile without a warrant, the officers were required

to have probable cause and exigent circumstances." **Hudson**, 92 A.3d at

1241. However, in **Gary**, **supra**, the Pennsylvania Supreme Court, in an

Opinion Announcing the Judgment of the Court ("OAJC"),[3] "adopt[ed] the

_____

[3] It merits mention that while **Gary** is a plurality decision, the result is precedential due to the nature of Justice Saylor's concurring opinion. **Gary**, 91 A.3d at 138 ("I join the lead Justices in adopting the federal automobile exception.").

Moreover, we note that **Gary** was decided on April 29, 2014, **after** the suppression hearing in this case. Neither this Court nor the Supreme Court
*(Footnote Continued Next Page)*

- 5 -

federal automobile exception to the warrant requirement, which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle." *Gary*, 91 A.3d at 104.[4]  Here, the Commonwealth does not allege exigent circumstances justified the warrantless search of Faison's vehicle.

_____
*(Footnote Continued)*

has explicitly addressed the issue of whether *Gary* applies retroactivity. Nevertheless, "the general rule in Pennsylvania is to apply the law in effect at the time of the appellate decision." *Commonwealth v. Housman*, 986 A.2d 822, 840 (Pa. 2009).

Furthermore, in *Hudson*, *supra*, a panel of this Court analyzed and applied *Gary* to the Commonwealth's appeal when the suppression hearing was held before *Gary* was decided.  Similarly, in *Commonwealth v. Dunn*, 95 A.3d 272 (Pa. 2014), the Pennsylvania Supreme Court vacated a decision of this Court, filed pre-*Gary*, and remanded for reconsideration in light of *Gary*.  On remand, a panel of this Court then applied *Gary* to the matter. *Commonwealth v. Dunn*, 2014 Pa. Super. LEXIS 4775 [1568 EDA 2011] (Pa. Super. Sept. 29, 2014) (unpublished memorandum).

[4]  Further, the Court determined:

> The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.  The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a per se exigency allowing police officers to make the determination of probable cause in the first instance in the field.

*Id.* at 138.

- 6 -

Therefore, our review in this matter is confined to the plain view exception to the search warrant requirement.

> Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. One exception, the **plain view doctrine**, permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014) (emphasis added), *appeal denied*, 2014 Pa. LEXIS 3507 [323 EAL 2014] (Pa. Dec. 30, 2014).

> In determining whether the incriminating nature of an object [is] immediately apparent to the police officer, we look to the totality of the circumstances. An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause. In viewing the totality of the circumstances, the officer's training and experience should be considered.

*Commonwealth v. Miller*, 56 A.3d 424, 430 (Pa. Super. 2012) (citations and quotation marks omitted).[5]

> Here, the trial court found the following:

> [Faison] properly argues that the incriminating nature of the bag of pills had to be readily apparent to the police officer in order for the warrantless search and seizure to be conducted. The arresting officer admits that he did not know the nature of the

---

[5] "Immediately apparent" has been defined in plain feel exception cases, which are analogous to plain view exception matters, as that which "the officer readily perceives, without further exploration or searching[.]" *Commonwealth v. Stevenson*, 744 A.2d 1261, 1265 (Pa. 2000).

> pills when he recovered them from [Faison]'s vehicle. N.T. 10/04/2013, at 8-9. The officer clearly indicated that he "did not know what the pills were at the time." N.T. 10/04/2013, at 10. It was not until the officer later contacted Poison Control that he learned the identity of the pills. Id. The incriminating nature of the pills was therefore not immediately apparent to the officer as is needed for the plain view exception to the warrant requirement to apply.

Trial Court Opinion, 4/1/2014, at 3-4.

Applying the three-part test of the plain view doctrine to the facts presently, it is clear that the court found the Commonwealth did not meet its burden with respect to the second prong, that the incriminating nature of the bag of pills was immediately apparent to the officer. We agree with the court's finding.

Moreover, this case is substantially similar to **Hudson**, **supra**. In **Hudson**, the police officers conducted a traffic stop of the defendant's car due to a broken tail light. **Hudson**, 92 A.3d at 1237. During the stop, the officers noticed the defendant reaching for the center console area. **Id.** The officers then conducted a protective search of the car, and when they opened the console, they observed three pill bottles. **Id.** Two pill bottles had the labels partially removed, while the label on third bottle was still intact and bore the defendant's name. **Id.** The bottles were seized and the defendant was arrested. **Id.** The pills were later determined to be prescription pain medication. **Id.** The defendant filed a motion to suppress, which was granted. **Id.** The trial court found the following:

> [The officer] was not able to testify that it was "immediately apparent" to him that these pill bottles contained illegal drugs. He admitted that he did not know what these bottles contained. He had to call Poison Control to conduct testing in order to determine that these were illegal narcotics. If such items were immediately apparent to him to be contraband, there would have been no need to have Poison Control conduct such tests.

*Id.* at 1242. On appeal, a panel of this Court affirmed the trial court's order, stating:

> We agree with the suppression court's conclusion that while the pill bottles themselves were in plain view, the contents of those bottles were not immediately apparent, and a pill bottle by itself is not contraband. Suppression Court Opinion, 7/19/13, at 1. The potentially incriminating contents of the pill bottles were not discovered until after they were improperly seized, searched, and tested, thereby proving that the "immediately apparent" requirement for the plain view exception had not been satisfied.

*Id.*

We believe that this case warrants similar treatment. Indeed, Officer Sharamatew testified:

> And just so you know, Your Honor, before then, I did contact Poison Control because I didn't know what the pills were. So I contacted Poison Control, described what the markings were on the pills, and they notified me that it was [a] Schedule II narcotic and at that point he was place[d] under arrest. I didn't know what the pills were at the time.

N.T., 10/4/2013, at 9-10. Without more evidence,[6] the fact that Faison had

a bag of nondescript pills in his car did not place the drugs in plain view as

_____

[6] We find the totality of the circumstances did not establish probable cause to believe the bag of pills was incriminating. While Officer Sharamatew did not need to be one hundred percent certain that the drugs were

*(Footnote Continued Next Page)*

their incriminating nature was not readily apparent. Consequently, the Commonwealth did not establish the officer had probable cause to seize the drugs.

Accordingly, pursuant to **Gary** and **Hudson**, the warrantless seizure of the bag of pills in Faison's car was unlawful, and we discern no reason to reverse the trial court's order. **See Hudson**, 92 A.3d at 1243. Accordingly, the Commonwealth's argument fails, and we affirm the trial court's order granting Faison's motion to suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015

*(Footnote Continued)* ———————————

incriminating, he was very uncertain regarding their substance and there was no testimony presented as to his training or experience with illegal narcotics. **See Miller**, 56 A.3d at 430. Moreover, the record does not support the Commonwealth's implication that Faison fled, where he walked away from the car while it was running after being stopped for a traffic violation. **See** Commonwealth's Brief at 10. The officer testified he observed Faison make the illegal turn and followed, watching Faison pull over and get out of the car. N.T., 10/4/2013, at 5-6. However, the officer does not state that he turned on the lights or siren, and he did not verbally tell Faison to stop. Likewise, we reject the Commonwealth's assertion that because the drugs were close in proximity to the gun, for which Faison had a **valid permit**, there was probable cause to believe the pills were incriminating.