J-S42041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DORIAN DAVENPORT :
:
Appellant : No. 156 WDA 2022

Appeal from the Judgment of Sentence Entered January 5, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001552-2019

BEFORE: BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: MAY 3, 2023**

Appellant, Dorian Davenport, appeals from the aggregate judgment of

sentence of $11^1/_2$ to 23 months' incarceration followed by 3 years' probation

imposed by the Court of Common Pleas of Allegheny County (trial court)

following a nonjury trial at which he was convicted of possession of a firearm

by a prohibited person, possession of a controlled substance (marijuana),

possession of a controlled substance (methamphetamine), possession of a

controlled substance (fentanyl), possession of drug paraphernalia, and

possession of an open alcohol container in a motor vehicle.[1]   After careful

review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1), 35 P.S. § 780-113 §§ (a)(16) and (32), and 75 Pa.C.S. § 3809(a), respectively.

The facts out of which this case arises, as found by the trial court on Appellant's motion to suppress evidence and at trial, are as follows. In the early morning hours of January 27, 2019, two Pittsburgh police officers patrolling the area around an after-hours nightclub shined a flashlight through the window of a car that was parked illegally near the nightclub and saw a firearm protruding from under the driver's seat. Trial Court Opinion and Order, 11/20/19, at 1; Trial Court Opinion, 4/4/22, at 4-5. One of the officers also saw through the car window an open beer bottle in the center console area and a utility bill addressed to Appellant on the passenger seat. Trial Court Opinion and Order, 11/20/19, at 1; Trial Court Opinion, 4/4/22, at 5. That officer returned to his patrol car and ran the license plate number, which showed that the car was registered to Appellant, and obtained a photograph of Appellant. Trial Court Opinion and Order, 11/20/19, at 2; Trial Court Opinion, 4/4/22, at 6. The officer also ran Appellant's name through the National Crime Information Center and determined that Appellant did not have a license to carry a firearm. Trial Court Opinion and Order, 11/20/19, at 2; Trial Court Opinion, 4/4/22, at 6.

The officers then called for backup and waited for the driver of the car to return. Trial Court Opinion and Order, 11/20/19, at 2; Trial Court Opinion, 4/4/22, at 6. At approximately 4:33 a.m., Appellant left the nightclub and returned to the car. Trial Court Opinion and Order, 11/20/19, at 1; Trial Court Opinion, 4/4/22, at 6. The officer who saw Appellant approach the car

confirmed that he appeared to match Appellant's photograph. Trial Court Opinion and Order, 11/20/19, at 2. After Appellant got in the car and started the engine, the police initiated a traffic stop and an officer directed Appellant to get out of the vehicle and detained him. *Id.*; Trial Court Opinion, 4/4/22, at 6. Another officer then seized the firearm, which was an operable Glock 21 handgun, from underneath the car's driver's seat. Trial Court Opinion and Order, 11/20/19, at 2; Trial Court Opinion, 4/4/22, at 5-6. The officer who detained Appellant asked Appellant if he had a permit to carry a concealed firearm, and Appellant replied that he did not. Trial Court Opinion and Order, 11/20/19, at 2; Trial Court Opinion, 4/4/22, at 6. The officer obtained Appellant's driver's license from his back right pants pocket, which confirmed his identity. Trial Court Opinion, 4/4/22, at 6.

The officer then placed Appellant under arrest and performed a search of Appellant's person in which he found a baggie containing marijuana and $1,905 in cash. Trial Court Opinion, 4/4/22, at 6. Officers also searched the car and found a baggie of powder that was later determined to contain fentanyl in the sunglasses holder, a baggie containing pink pills that were later determined to be methamphetamine and a scale inside the center console, and containers with marijuana residue. *Id.* at 5-7. The car was then towed to a police impoundment lot because it was parked illegally and too close to the intersection. Trial Court Opinion and Order, 11/20/19, at 2; Trial Court Opinion, 4/4/22, at 7.

Appellant was charged with possession of a firearm by a prohibited person, carrying a firearm without a license, possession of a controlled substance (marijuana), possession of a controlled substance (methamphetamine), possession of a controlled substance (fentanyl), possession of drug paraphernalia, and possession of an open alcohol container in a motor vehicle. On July 31, 2019, Appellant filed a motion to suppress the firearm, drugs, and drug paraphernalia on the ground that the police lacked reasonable suspicion or probable cause to detain Appellant and lacked probable cause for the search of the car. The trial court held a hearing on this motion to suppress on November 14, 2019, at which the arresting officer testified, and denied the motion to suppress by order entered November 20, 2019. Trial Court Opinion and Order, 11/20/19, at 6.

On April 9, 2021, Appellant filed a motion to reconsider the denial of his motion to suppress asserting, *inter alia*, that the warrantless search of and seizures from the car violated Article I, Section 8 of the Pennsylvania Constitution under **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), which was decided after the denial of Appellant's suppression motion. The trial court granted the motion to reconsider insofar as it raised the issue of whether the search and seizures were unconstitutional under **Alexander**, scheduled a further suppression hearing limited to that issue, and denied the motion to reconsider in all other respects. Trial Court Order, 4/15/21, at 2. The trial court held the supplemental suppression hearing, at which the

arresting officer again testified, on April 22, 2021. On June 25, 2021, the trial court denied Appellant's motion to suppress under **Alexander** on the grounds that the search and seizure of the firearm was constitutional under the plain view exception to the warrant requirement. Trial Court Order, 6/25/21, at 1-2.

On October 7, 2021, Appellant waived his right to a jury trial and following a nonjury trial based on stipulated evidence and facts, the trial court convicted Appellant of possession of a firearm by a prohibited person, possession of a controlled substance (marijuana), possession of a controlled substance (methamphetamine), possession of a controlled substance (fentanyl), possession of drug paraphernalia, and possession of an open alcohol container in a motor vehicle, and acquitted him of the charge of carrying a firearm without a license. N.T. Trial at 2-14, 24-25; Trial Court Opinion, 4/4/22, at 3-5. On January 5, 2022, the trial court sentenced Appellant to $11^1/_2$ to 23 months' incarceration followed by 3 years' probation for possession of a firearm by a prohibited person, 1 year of probation for possession of a controlled substance (marijuana) concurrent to the probation portion of the possession of a firearm by a prohibited person sentence, and no further penalty for the other convictions. N.T. Sentencing at 29-31; Sentencing Order. This timely appeal followed.

In this appeal, Appellant challenges only the trial court's denial of his motion to suppress, stating as the only issue for review:

Should Appellant's pretrial motion, seeking suppression of the gun, drugs, and drug paraphernalia found in his car, have been granted?

Appellant's Brief at 4.

Our standard of review on this issue is well-settled:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 498-99 (Pa. Super. 2021) (*en banc*) (quoting *Commonwealth v. Bumbarger*, 231 A.3d 10 (Pa. Super. 2020)). Appellant challenges the trial court's failure to suppress the firearm found protruding from under the driver's seat of the car and the drugs and drug paraphernalia found on his person and in the car on the ground that the police lacked probable cause to believe that the firearm was illegal and that no warrant was obtained to enter or search the car.

Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals and their effects and possessions from unreasonable searches and seizures. *Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018); *Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa. Super. 2022); *Heidelberg*, 267 A.3d at 502. A search or seizure conducted without a

warrant is unreasonable and therefore constitutionally impermissible unless an established exception to the warrant requirement applies. *Valdivia*, 195 A.3d at 861; *McMahon*, 280 A.3d at 1072; *Heidelberg*, 267 A.3d at 502. Under Article I, Section 8, the fact that an automobile is involved does not automatically exempt a search from the requirement that police obtain a warrant. *Alexander*, 243 A.3d at 181, 207-08.

The plain view doctrine is an established exception to the warrant requirement and applies where an object in a vehicle is visible to a law enforcement officer from a lawful vantage point outside the vehicle. *Commonwealth v. Smith*, 285 A.3d 328, 332 (Pa. Super. 2022); *Commonwealth v. Lutz*, 270 A.3d 571, 577 (Pa. Super. 2022); *Heidelberg*, 267 A.3d at 504. "There can be no reasonable expectation of privacy in an object that is in plain view." *Heidelberg*, 267 A.3d at 504 (quoting *Bumbarger*). Three requirements must be satisfied for a warrantless search and seizure to be constitutional under the plain view doctrine: (1) a police officer must view the object from a lawful vantage point; (2) it must be immediately apparent to him that the object is incriminating; and (3) the officer must have a lawful right of access to the object. *Commonwealth v. Davis*, 287 A.3d 467, 471 (Pa. Super. 2022); *Smith*, 285 A.3d at 332; *Heidelberg*, 267 A.3d at 504. *Alexander* did not alter the availability of the plain view doctrine as an exception to the warrant requirement or the

application of the plain view doctrine. *Davis*, 287 A.3d at 472-73; *Smith*, 285 A.3d at 332; *McMahon*, 280 A.3d at 1073-74.

All three requirements of the plain view doctrine were satisfied here. The trial court found that the police officers observed the firearm protruding from beneath the driver's seat of Appellant's car by looking through the car window from outside the car on a public street and that finding is supported by the record. Trial Court Order, 6/25/21, at 2; Trial Court Opinion and Order, 11/20/19, at 1; N.T., 11/14/19, at 5-6, 18-19. Standing outside a vehicle on a public street and observing an object in the interior of the vehicle by looking through the window of the vehicle satisfies the requirement that the object be seen from a lawful vantage point. *Smith*, 285 A.3d at 333 (observing interior of a vehicle through a window from outside the vehicle by shining a flashlight constitutes observation from a lawful vantage point); *Heidelberg*, 267 A.3d at 504; *Commonwealth v. Turner*, 982 A.2d 90, 93 (Pa. Super. 2009).

The trial court found that incriminating nature of the firearm was apparent to the officers when Appellant returned to the car and got into the driver's seat because they knew that Appellant, who they knew was also the owner of the car, did not have a license to carry a firearm. Trial Court Order, 6/25/21, at 2; Trial Court Opinion and Order, 11/20/19, at 3-4. This finding is fully supported by the record. N.T., 11/14/19, at 6-12, 25-26, 29-31, 39. The trial court's conclusion that this satisfied the requirements of the plain view doctrine was likewise legally correct. The incriminating nature of a

firearm is apparent where police observe the firearm under the driver's seat of a car and have performed a record check that shows that the driver does not have a license to carry a firearm. ***Davis***, 287 A.3d at 469-70, 473-74.

Appellant argues that the officers did not have sufficient knowledge that the firearm was illegal because the requirement of a license to carry a firearm applies only to certain sizes of guns and the officers could not see the entire gun. We do not agree. Section 6106(a) of the Crimes Code, 18 Pa.C.S. § 6106(a), which prohibits the carrying of a firearm in a vehicle without a license, applies to "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." 18 Pa.C.S. § 6102. The plain view doctrine requires only that the police have probable cause to believe that the object is incriminating, not that they have certainty that it is incriminating. ***Smith***, 285 A.3d at 333; ***Lutz***, 270 A.3d at 578; ***Turner***, 982 A.2d at 92. While the officers could only see only an inch or two of the barrel of the gun, N.T., 11/14/19, at 6, 20, they could reasonably conclude that the gun was less than 26 inches in overall length because it was otherwise hidden in the limited space under the driver's seat. The officers therefore had probable cause to conclude that it was a firearm that required a license. ***Cf. Commonwealth v. Rozplochi***, 561 A.2d 25, 31-32 (Pa. Super. 1989) (even where size of gun must be proven beyond a reasonable doubt, evidence was

sufficient to prove that gun fell within the dimensions that constituted a firearm under Section 6102 where there was evidence of the size of an object that concealed the gun); *Commonwealth v. Brown*, No. 724 EDA 2018, slip op. at 7-8 (Pa. Super., Aug. 27, 2019) (unpublished memorandum) (same). Moreover, the officers could draw conclusions as to the nature of the gun from observing its barrel and the arresting officer, who testified that he had experience with violations of the Uniform Firearms Act, concluded that it was a firearm that required a license. N.T., 11/14/19, at 5-6, 9-10, 20, 26.

The trial court also correctly concluded that the officers had a lawful right of access to seize the illegal firearm. Where police observe an illegal item in plain view in a vehicle from a lawful vantage point and did not have advance notice and opportunity to obtain a warrant, the officers have a limited lawful right of access to the vehicle to seize the illegal item that is in plain view. *Davis*, 287 A.3d at 472-74; *Smith*, 285 A.3d at 334; *McMahon*, 280 A.3d at 1074. That situation was present here. Although the police had knowledge that there was a firearm in the vehicle for a significant period of time, a firearm is not illegal unless the person possessing the firearm either is prohibited from possessing firearms or does not have a license to carry a firearm, and mere presence of a firearm is insufficient to support even a reasonable suspicion of criminal activity. *Commonwealth v. Hicks*, 208 A.3d 916, 925-26, 936-37 (Pa. 2019). The police therefore lacked probable cause to conclude that the firearm was illegal until Appellant returned to the

car and they knew that a person without a license was carrying the firearm in the car. That event occurred immediately before the seizure of the firearm.

In any event, an additional factor was present here that justified the limited entry into the car to remove the firearm. The testimony at the suppression hearing showed that Appellant had started the car and that the engine was running when he was directed to get out of the car. N.T., 11/14/19, at 11, 41. There is no evidence in the record that Appellant turned off the car's engine before he got out. Where a vehicle's engine is running after the defendant has been removed from the vehicle, the police have a legitimate need to enter the vehicle to turn off the ignition and therefore have a lawful right of access to seize an illegal item in plain view in the area of the driver's seat. *Lutz*, 270 A.3d at 579.

The seizure of the firearm was therefore constitutional under the plain view doctrine and the trial court did not err in denying Appellant's motion to suppress with respect to the firearm. In contrast, the plain view doctrine has no applicability to the drugs and drug paraphernalia found on Appellant's person and in the car. None of these items were seen by the police in plain view from outside the car. Rather, the marijuana was found inside Appellant's left front jacket pocket, the fentanyl was inside the car's sunglasses holder, the methamphetamine and the scale were inside the car's center console, and the other drug paraphernalia were found in the backseat of the car during a warrantless search of the car. Trial Court Opinion, 4/4/22, at 6-7; N.T.,

11/14/19, at 16-17. The denial of the motion to suppress these items can thus be sustained only if another exception to the warrant requirement or exclusionary rule applies.

We conclude that the trial court properly denied the motion to suppress with respect to the marijuana found on Appellant's person because it was found and seized in a search incident to a lawful arrest. The search incident to arrest exception to the warrant requirement permits arresting officers to search an arrestee's person as a matter of course without a determination of whether such search is needed to protect officer safety or evidence in that case. *Lutz*, 270 A.3d at 579-80; *Commonwealth v. Yorgey*, 188 A.3d 1190, 1198 (Pa. Super. 2018) (*en banc*); *Commonwealth v. Simonson*, 148 A.3d 792, 799 (Pa. Super. 2016). The record shows that the police arrested Appellant for carrying a firearm in a vehicle without a license after they confirmed his identity, that they searched his person after arresting him, and that they found the marijuana during that search. N.T., 11/14/19, at 14-15; N.T., 4/22/21, at 9, 18-19. The arrest was lawful because the police had probable cause to arrest Appellant for carrying a firearm in a vehicle without a license after he got into the car, as they then knew that he had no license to carry a firearm and that he was driving a car in which a firearm was under the driver's seat. N.T., 11/14/19, at 6-12, 25-26, 29-31, 39. Indeed, Appellant does not dispute that the search that found the marijuana was a search incident to arrest or that there was probable cause for Appellant's

arrest if the police had probable cause to believe that the firearm was illegal. Rather, Appellant argues that the marijuana should have been suppressed solely on the ground that the arrest was the fruit of an allegedly illegal seizure of the firearm, Appellant's Brief at 22-23, which fails in light of our conclusion that the police had probable cause to believe that the firearm was illegal and was lawfully seized under the plain view doctrine.

The warrantless investigative search of Appellant's car in which the other drugs and the drug paraphernalia were seized did violate his rights under Article I, Section 8 of the Pennsylvania Constitution. A warrantless search of a vehicle is unconstitutional under Article I, Section 8, even where the police have probable cause, unless exigent circumstances or another exception to the warrant requirement is shown. *Alexander*, 243 A.3d at 181, 207-08. The trial court did not find any exigent circumstances that justified the search of Appellant's car. Trial Court Order, 6/25/21, at 1. Nor can the car search be upheld as a search incident to arrest because the car was no longer within Appellant's control. *Lutz*, 270 A.3d at 580.

Even where a search or seizure violates Article I, Section 8, however, suppression of evidence is not required where the evidence would inevitably have been obtained through lawful means without the unconstitutional search or seizure. *Heidelberg*, 267 A.3d at 505; *Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009). Inventory searches conducted to secure and inventory the contents of impounded motor vehicles pursuant to standard

government policy and not for investigative purposes are an exception to the warrant requirement and do not violate the owners' constitutional rights. **Commonwealth v. Thompson**, 289 A.3d 1104, 1107-10 (Pa. Super. 2023). Under the inevitable discovery doctrine, suppression is therefore not required where the Commonwealth shows that the police lawfully towed the vehicle and that an inventory search would have been conducted under standard government policy and would have found the evidence. **Heidelberg**, 267 A.3d at 505-06; **Bailey**, 986 A.2d at 863.

Here, the trial court found that the car had to be towed and was towed after Appellant was arrested and that it would have been subject to an inventory search. Trial Court Order, 6/25/21, at 2; Trial Court Opinion and Order, 11/20/19, at 2. Those findings are supported by the record. N.T., 11/14/19, at 6-7, 15-16; N.T., 4/22/21, at 7-10. The record further shows that places where the fentanyl, methamphetamine, and drug paraphernalia were found would have all been searched in an inventory search of the car. N.T., 4/22/21, at 8-10. Moreover, Appellant does not argue that that the car did not have to be towed once he was arrested or that these items would have not been discovered in a lawful inventory search. Rather, he contends that no towing or inventory search should have occurred based on his claim, which we have rejected, that his arrest for carrying a firearm without a license was illegal and that he should therefore have been only ticketed for illegal parking and the open alcohol container violation and allowed to drive away.

Appellant's Brief at 22 n.5. Because Appellant was lawfully arrested, the car was lawfully towed, and an inventory search would have would have been conducted, the trial court properly denied suppression of the fentanyl, methamphetamine, and drug paraphernalia despite the illegality of the investigative car search in which they were found. *Heidelberg*, 267 A.3d at 505-06; *Bailey*, 986 A.2d at 863.

For the foregoing reasons, we conclude that did not err in denying Appellant's motion to suppress. Appellant's sole issue in this appeal is therefore without merit. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2023